

HMG/PR:USAO#2020R00190

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 20-0143 |
| | : | |
| v. | : | (Conspiracy, 18 U.S.C. § 371; Tax |
| | : | Fraud, 26 U.S.C. § 7206(1); Forfeiture |
| **JAMES EDWARD BENDER,** | : | Notice, 18 U.S.C. § 981(a)(1)(C), 21 |
| | : | U.S.C. § 853, 28 U.S.C. 2461) |
| a/k/a "**EDDIE BENDER**" | : | |
| | : | |
| Defendant. | : | |
| | : | |

...oOo...

## INFORMATION

## COUNT ONE

The United States Attorney for the District of Maryland charges:

## INTRODUCTION

At times material to this information:

1. Defendant **JAMES EDWARD BENDER, a/k/a "EDDIE BENDER,"** ("**BENDER**") lived in Baltimore, Maryland.

2. SC1 was an individual living in Colorado.

3. SC2 was a relative of SC1, who lived in Worcester County, Maryland.

4. eBay, Inc. and Amazon, Inc. operated online marketplaces that allowed individuals and businesses to sell goods and merchandise through the internet.

5. PayPal Holdings, Inc. ("PayPal") was an online payments system that allowed online money transfers and served as an alternative to more traditional payment methods such as cash, checks, wire transfers, and credit card payments for services, goods and merchandise.

6. **BENDER** sold free or discounted furniture that he had purchased and restored using the name Hidden Gem Furniture.

7. **BENDER** controlled and operated an online account through eBay called HiddenGemFurniture ("HGF") that had been created by Person A.

8. **BENDER** created and controlled online accounts through eBay called "EddiesAffordableGear" ("EAG") and "AffordableGoodies4You" ("AG"). EAG and AG offered sports related merchandise for sale, including jerseys and shirts.

9. **BENDER** used, operated and controlled a PayPal account ending in 4211 ("PayPal 4211") that was linked to HGF, EAG, and AG.

## THE CONSPIRACY AND ITS OBJECTS

10. Beginning at least in or about April 2014 and continuing until in or about August 2019, in the District of Maryland and elsewhere,

**JAMES EDWARD BENDER,**

the defendant herein, did combine, conspire, confederate and agree with SC1, SC2, and with persons known and unknown, to commit offenses against the United States, namely to:

a. knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses and individuals, including eBay, Amazon, PayPal, eBay customers, and the manufacturers and distributors of goods and merchandise, and obtain money by means of

materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and

      b.      unlawfully transport, transmit, and transfer in interstate commerce, stolen goods, wares and merchandise, which had a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of 18 U.S.C. § 2314.

## METHODS AND MEANS

11.      It was part of the conspiracy that **BENDER** made an agreement with two individuals (hereinafter "SC1" and "SC2") that allowed SC1 and SC2 to sell goods and merchandise through the eBay stores that **BENDER** controlled, including HGF, EAG, and AG.

12.      It was further part of the conspiracy and scheme to defraud that:

      a.      **BENDER** allowed SC1 to login directly to the eBay portal that controlled HGF, EAG, and AG;

      b.      **BENDER** allowed SC1 access and control over **BENDER**'s PayPal 4211, which was linked to HGF, EAG, and AG;

      c.      **BENDER** repeatedly engaged in interstate sales of goods and merchandise, which were then shipped to customers throughout the United States by SC1 and SC2;

      d.      SC1 and **BENDER** repeatedly sent emails that resulted in interstate wire communications;

e. **BENDER** and SC1 had repeated communications about how to sell goods and merchandise online without attracting attention from online platforms such as Amazon, eBay, as well as the manufacturers and distributors of goods and merchandise being sold by **BENDER** and SC1;

f. when **BENDER** was notified that stolen goods and merchandise had been sold through HGF, **BENDER** continued to allow SC1 to use **BENDER's** eBay store HGF to sell goods and merchandise;

g. when Amazon questioned the source of goods and merchandise sold through Amazon by **BENDER**, SC1 and **BENDER** worked together to provide Amazon with false, fraudulent and fictitious documents;

h. when eBay questioned the source of goods and merchandise sold through **BENDER's** eBay stores, **BENDER** and Person A provided false, fraudulent and fictitious documents and information to eBay;

i. when PayPal questioned the relationship between **BENDER** and SC1, **BENDER** and SC1 caused fraudulent, false, and fictitious information to be submitted to PayPal so SC1 could continue to sell goods and merchandise through **BENDER's** HGF, EAG, and AG;

j. SC1 and **BENDER** agreed that **BENDER** would receive a portion of the sales on the eBay stores, which amounted to at least $10,000 per year, in return for **BENDER** allowing SC1 to sell goods and merchandise through HGF, EAG, and AG;

k. money obtained from the sale of goods and merchandise flowed to **BENDER's** PayPal 4211, to SC1's PayPal account ending in 5001 ("PayPal 5001"), and to bank

4

accounts that **BENDER** and SC1 had linked to their PayPal accounts, resulting in interstate wire communications;

  l. SC1 and **BENDER** received money by means of interstate and foreign wires;

  m. **BENDER** and SC1 withdrew money from eBay sales from their bank accounts, resulting in interstate wires; and

  n. more than $3 million of stolen goods and merchandise was sold through HGF, EAG, and AG, including goods and merchandise intended to be used for the education of underprivileged school children.

### Overt Acts

13. In furtherance of the conspiracy and scheme to defraud, at least one of the co-conspirators committed and caused to be committed, in the District of Maryland and elsewhere, at least one of the following overt acts:

  a. In or about May 2014, SC1 provided **BENDER** with a false and fictitious invoice from Patriot Enterprises, supposedly of Laurel, DE, to EAG for video games totaling $17,500, which **BENDER** in turn submitted to Amazon.

  b. On or about June 5, 2014, **BENDER** coached Person A on how to deceive eBay about the items offered for sale on HGF.

  c. On or about July 14, 2014, SC1 and **BENDER** discussed by email the difficulty with selling Apple products on eBay.

  d. On or about July 14, 2014, **BENDER** wrote to SC1 about the possibility

of moving sales of Apple products "offline," "i.e. the street just to move it" since this was a way to deal "with inventory that gets too hot."

    e.    On or about July 14, 2014, **BENDER** wrote to SC1 about "flying under the radar" and avoiding "any 'extra attention' to [the eBay HGF account]."

    f.    On or about July 22, 2014, **BENDER** expressed concern to SC1 about selling Apple products through eBay, writing that eBay "will want receipts or proof that the apple products are licensed product and not counterfeit/stolen. Last time they grilled me on how/where I acquired such items . . . ."

    g.    On or about July 22, 2014, **BENDER** wrote to SC1 about how SC1 had "made up an invoice for [**BENDER**] to send" when **BENDER** wanted to have the sales limits imposed by eBay raised for the AG account.

    h.    On or about July 22, 2014, **BENDER** wrote to SC1, asking in regards to Apple products, "What is a plausible way that I could have acquired these items at a decent price and what evidence could I provide to back that up? . . . shady, yes, but possible?"

    i.    On or about August 5, 2014, **BENDER** wrote to SC1, describing a recent phone call from Person A to eBay to discuss sales of Apple products through HGF, including how Person A had provided fraudulent, false and fictitious information to eBay about using Walmart gift cards to purchase Apple products.

    j.    On or about August 5, 2014, SC1 wrote to **BENDER** that "If all goes well as i suspect it will, this is going to be one hell of a last 3-4 months. Apple has been my bread and butter for 7 years, welcome to the ride."

6

k.  In or about December 2014, after **BENDER** was notified about potential sales of stolen watches by HGF, **BENDER** sent an email based on false information from SC1 that falsely claimed HGF had contacted the liquidation company from which it bought the watches, that the watches were not stolen, and that the watches were activated.

l.  In or about 2015, in response to complaints from HGF customers about goods and merchandise purchased through HGF, **BENDER** and SC1 worked to provide the customers with false, fraudulent, and fictitious invoices, falsely showing how items sold through HGF had been originally acquired.

m.  On or about August 23, 2016, after a PayPal representative inquired about certain PayPal transfers, **BENDER** and SC1 exchanged emails in which they agreed to provide false information to PayPal regarding **BENDER's** ownership of SC1's PayPal 5001.

n.  On or about August 24, 2016, **BENDER** sent an email to PayPal falsely claiming that **BENDER** owned PayPal 5001 when BENDER and SC1 then and there knew it was owned by SC1.

o.  On or about August 21, 2017, at SC1's direction and request, **BENDER** logged into HGF and changed certain account information from Person A's name to HGF.

p.  On or about May 7, 2018, SC1 logged into HGF and created a listing for "Brand New Apple iPod Touch 128 GB Latest Model," which eventually resulted in interstate sales during 2018 of more than 100 iPods that had been stolen from a school district.

q.  On or about May 9, 2018, **BENDER** learned from a law enforcement officer in Phoenix, AZ that SC1 had sold a stolen Garmin GPS device through HGF, but

7

**BENDER** continued to let SC1 sell items through HGF.

r.  On or about June 5, 2018, SC1 and **BENDER** sold more than 20 stolen iPods through the eBay store for HGF, resulting in an interstate wire.

s.  On or about June 6, 2018, $2,000 was withdrawn and transferred from **BENDER's** PayPal account to **BENDER's** checking account at Bank of America, resulting in an interstate wire.

t.  On or about June 12, 2018, $25,684.43 was withdrawn and transferred from **BENDER's** PayPal account to a business account controlled by SC1 at Bank of America, resulting in an interstate wire.

u.  In or about August 2018, **BENDER** continued to let SC1 sell through HGF even though **BENDER** and SC1 had been notified by an attorney that Qunol supplements sold by HGF were "stolen or otherwise illegally obtained," and were being sold for less than it cost to produce the product.

v.  On or about December 12, 2018, **BENDER** and SC1 sent interstate emails discussing HGF and PayPal, and agreed that SC1 would more fully control the operation of HGF and **BENDER's** PayPal 4211.

18 U.S.C. § 371

## COUNT TWO

The United States Attorney for the District of Maryland further charges that:

1. Paragraphs 1-9 of Count One of this Information are hereby incorporated by reference.

2. On or about April 15, 2016, in the District of Maryland and elsewhere,

**JAMES EDWARD BENDER,**

the defendant herein, in the District of Maryland, when he was a resident of Baltimore, Maryland, did willfully make and subscribe a U.S. Joint Income Tax Return, IRS Form 1040, for the year 2015, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Form 1040, which was filed with the IRS, falsely reported gross receipts, in line 1 of Schedule C, of $1,384,156 and cost of goods sold, in line 4 of Schedule C, of $1,151,371, when the defendant then and there knew his gross receipts and cost of goods sold were substantially less than the reported amounts.

26 U.S.C. § 7206(1)

## FORFEITURE

The United States Attorney for the District of Maryland further finds that:

1. The allegations contained in Count One are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), in the event of the defendant's conviction under Count One of the Information.

### Conspiracy Forfeiture

3. As a result of the offense set forth in Count One, the defendant,

**JAMES EDWARD BENDER,**

shall forfeit to the United States any and all property constituting, or derived from proceeds obtained directly or indirectly as a result of such violations, including all interest and proceeds traceable thereto.

### Substitute Assets

4. If any of the proceeds described in this Information as being subject to forfeiture, as a result of any act or omission of the defendant,

**JAMES EDWARD BENDER,**

(a) cannot be located upon the exercise of diligence;

(b) has been transferred, or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States, pursuant to, Title 21, United States Code § 853 shall be entitled to forfeiture of substitute property up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

6-1-2020
Date

*Robert Hur/hg*
ROBERT K. HUR
UNITED STATES ATTORNEY