

*JM*
*2/28/20*

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Harry M. Gruber*<br>*Assistant United States Attorney*<br>*Harry.Gruber@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4835*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3910* |

February 28, 2020

Joseph Murtha
Murtha Psoras & Lanasa LLC
1301 York Road, Suite 200
Lutherville, Maryland 21093

  Re: <u>United States v. James Edward Bender</u>
     Crim. No. CCB-20-143

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, James Edward Bender (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by March 17, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows: *17 gm SEB*

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a two count Information, which will charge the Defendant in Count One with Conspiracy, in violation of 18 U.S.C. § 371, and in Count Two with Tax Fraud, in violation of 26 U.S.C. § 7206(1). The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offense

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count One - Conspiracy

First, that in or about the time period alleged in the Information, the Defendant and at least one other person entered into the unlawful agreement alleged in the Information;

Second, that the Defendant knowingly and willfully became a member of the conspiracy; and

Third, that at some point during the conspiracy alleged in the Information, a member of the conspiracy knowingly engaged in an overt act for the purpose of advancing or helping the conspiracy.

### Count Two – Tax Fraud

First, that the Defendant made, or caused to be made, or subscribed and filed an income tax return for calendar year 2015 as alleged in the Information, which was false as to a material matter;

Second, that the return contained a written declaration that it was made under penalties of perjury;

Third, that the Defendant did not believe the return to be true and correct as to every material matter; and

Fourth, that the Defendant acted willfully.

## Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 18 U.S.C. § 371 | N/A | 5 years | 3 years | $250,000 or twice the gain or loss from the offense | $100 |

| 2 | 26 U.S.C. § 7206(1) | N/A | 3 years | 1 year | $100,000 | $100 |

      a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.    If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel.

That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible

denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

    i.  The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the United States Attorney without a Grand Jury.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a.  As to Count One, the parties stipulate and agree that U.S.S.G. § 2B1.1 applies to this offense, resulting in a base offense level of six (6). The parties further stipulate and agree that the reasonably foreseeable losses as a result of the offense was more than $1,500,000, but less than $3,500,000 resulting in a sixteen (16) level increase in the offense level, pursuant to U.S.S.G. § 2B1.1(b)(1)(I). The parties further stipulate and agree that the offense level should be increased by two (2) levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved 10 or more victims, and the offense level should be reduced by two (2) levels, pursuant to U.S.S.G. § 3B1.2(b), because the Defendant was a minor participant, resulting in a final offense level of **twenty-two (22)**.

    b.  As to Count Two, the parties stipulate and agree that U.S.S.G. § 2T1.1 and 2T4.1 apply to the Defendant's offense, resulting in an offense level of twelve (12) because the reasonably foreseeable tax loss associated with the Defendant's tax offense and relevant conduct

Case 1:20-cr-00143-CCB   Document 6   Filed 06/18/20   Page 6 of 14

was between $15,000 and $40,000, resulting in an adjusted offense level of **twelve (12) for Count Two**.

        c.      The parties further stipulate and agree that pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two are grouped together, and that pursuant to U.S.S.G. § 3D1.3(a), the highest offense level of the counts in the Group shall be used. In this case, this results in a combined applicable offense level of **twenty-two (22)**.

        d.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The Defendant and his counsel must provide the U.S. Attorney's Office with any information that will be used and/or relied upon at sentencing no less than fourteen (14) days prior to sentencing. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

Rev. August 2018

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

        i. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742, or otherwise, to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

    b. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11. The Defendant understands that the Court will enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture will include assets directly traceable to the offense in Count One, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense, including a sum of money equal to the value of the proceeds of the offense, which amount is **at least $50,000**. If specific direct or substitute assets are forfeited and liquidated, any net proceeds of the asset shall be applied to the money judgment.

12. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

13. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the

forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Restitution

15. The Defendant agrees to the entry of a Restitution Order for the full amount of the actual losses associated with Count One. The Defendant agrees that, pursuant to 18 U.S.C. § 3663 and 3663A and § 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. If restitution is not paid by the date of sentencing, the Defendant further agrees that the Defendant will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

Tax Liability & Restitution

16. Pursuant to 18 U.S.C. § 3663(a)(3), the Defendant agrees in connection with his offense in Count Two, to make restitution to the Internal Revenue Service (hereinafter "IRS") in the amount of **$36,518**, plus interest that will have accrued on that amount as measured from the date that each tax liability constituting that amount initially became due and owing to the IRS up to and including the date of sentencing. This amount is in addition to the restitution due and owing in connection with Count One of the Information. The Defendant acknowledges and agrees that the amounts referred to herein are negotiated amounts for plea purposes only and do not legally bind or foreclose separate administrative or civil claims by the IRS related to the conduct that is the subject of this plea agreement. The parties agree that this agreement, and any payment under this agreement, will not constitute a settlement, waiver, or release by the IRS of any civil or administrative rights or remedies it may have against the Defendant. If the Court orders the Defendant to pay restitution to the IRS for the failure to pay tax, either directly or indirectly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. Section 6201(a)(4). The Defendant concedes that she does not have the right to challenge the amount of this assessment. See id. Neither the existence of a restitution payment schedule nor the Defendant's timely payment of restitution according to

that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. Section 6331.

17.  The Defendant understands that this agreement does not resolve any civil tax liability that he may have, and that this agreement is with the United States Attorney's Office, not with the IRS. The IRS is not a party to this agreement and remains free to pursue any and all lawful remedies it may have. The Defendant agrees to cooperate fully with the IRS in the determination of his tax liability and the tax liablity of any business that she has owned or controlled, and specifically agrees:

    a.  that nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to the Defendant's returns after they are filed;

    b.  that the Defendant is liable for the civil fraud penalty imposed by 26 U.S.C. Section 6651(f) with respect to the Form 1040 tax returns filed by him and his spouse for the tax years 2012-2018; and

    c.  that the contents of any criminal file pertaining to his conduct maintained by the Criminal Investigation Division of the IRS and/or the U.S. Attorney's Office/Department of Justice may be given to civil attorneys, agents and support staff of the IRS to enable them to investigate any and all civil taxes and penalties that may be due and owing by the Defendant and any entity formed or controlled by the Defendant. To the extent necessary to effect such disclosure, the Defendant waives any rights she may have pursuant to 26 U.S.C. Sections 6103(h)(4), 7213, and Federal Rule of Criminal Procedure Section 6(e).

## Collection of Financial Obligations

18.  The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Defendant's Conduct Prior to Sentencing and Breach

19.  Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal,

Rev. August 2018

state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

## Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

*Harry M. Gruber*
Harry M. Gruber
Paul Riley
Assistant United States Attorneys

    I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

__3/17/2020__              *James Edward Bender*
Date                                        James Edward Bender

    I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

__3/17/2020__              *Joseph Murtha*
Date                                        Joseph Murtha, Esq.

## ATTACHMENT A - BENDER FACTUAL STIPULATION

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

From 2014 to August 2019, defendant James Edward Bender (hereinafter "defendant" or "Bender") lived in Baltimore, Maryland. During this time period, Bender controlled and operated an online account through eBay called HiddenGemFurniture ("HGF") that had been created by Person A, as well as two additional eBay accounts called "EddiesAffordableGear" ("EAG") and "AffordableGoodies4You" ("AG"). EAG and AG offered sports related merchandise for sale, including jerseys and shirts. Bender used, operated and controlled a PayPal account that was linked to HGF, EAG, and AG.

Bender was close friends with an individual (hereinafter "SC1"), who lived in Texas and Colorado from 2014 to the present. From approximately December 2014 to the present, SC1 was a resident of Aurora, Colorado. SC2 is SC1's relative and at all relevant times, SC2 has been a resident of Berlin, Maryland.

In or about April 2014, SC1 informed Bender that SC1's eBay account had been suspended "because recent account activity had raised serious security concerns." In or about May 2014, Bender entered into an agreement with SC1 that allowed SC1 and SC2 to sell goods and merchandise through the eBay stores that Bender controlled, including HGF, EAG, and AG. Soon thereafter, eBay notified the defendant that it was suspending EAG and AG because eBay had linked the accounts to SC1's eBay account. Thereafter, HGF became the primary means for SC1 to sell the goods and merchandise. The defendant let SC1 login directly to the eBay portal that controlled HGF, EAG, and AG. Bender also gave SC1 access and control over Bender's PayPal account ending in 4211 (hereinafter "PayPal Acct#4211"), which was linked to HGF, EAG, and AG.

From May 2014 to August 2019, the defendant and SC1 periodically discussed the problems with selling certain products, such as Apple products, online through eBay. In May 2014, Bender submitted a fake invoice to Amazon after Amazon questioned certain goods and merchandise listed for sale on its marketplace. In July 2014, Bender wrote to SC1 that they should consider moving sales of Apple products "offline," "i.e. the street just to move it" since this was a way to deal "with inventory that gets too hot." Also in July 2014, Bender wrote to SC1 about the need to "fly[ ] under the radar" and avoid "any 'extra attention' to [the eBay HGF account]." In July 2014, Bender also wrote to SC1, asking in regards to Apple products, "What is a plausible way that I could have acquired these items at a decent price and what evidence could I provide to back that up? . . . shady, yes, but possible?" In August 2014, Bender coached and assisted Person A in providing false information to eBay to allow the sales of goods and merchandise to continue. In 2015, after eBay customers complained about goods and merchandise purchased through HGF, Bender and SC1 worked to provide the eBay customers with false, fraudulent, and fictitious invoices, falsely showing how items sold through HGF had been originally acquired.

1

From May 2014 to August 2019, SC1 and Bender repeatedly engaged in interstate sales of goods and merchandise. In furtherance of the sales, SC1 and Bender caused multiple financial transactions that resulted in interstate wires, including PayPal transactions, wire transfers, and bank withdrawals and transfers. SC1 and Bender also repeatedly sent and received emails that travelled interstate via wires.

The defendant stipulates that from in or about 2014, until August 2019, in Maryland, he entered into an illegal agreement with SC1, and others known and unknown, (1) to knowingly and willfully devise and intend to devise a scheme and artifice to defraud eBay, eBay customers, PayPal, and the manufacturers and distributors of goods and merchandise through false pretenses, representations, and promises and (2) to sell goods and merchandise in interstate commerce that had been previously stolen. During the course of the conspiracy and scheme to defraud, the defendant was repeatedly alerted to issues and concerns about the products offered for sale through his eBay stores, and repeatedly ignored the notices, letters, emails, and other warnings that put him on notice that the goods and merchandise were stolen. The defendant, although a participant in the sale of the stolen goods, was unaware of the volume of stolen merchandise being offered for sale by SC1.

In furtherance of the conspiracy and scheme to defraud, Bender and SC1 repeatedly deceived online platforms such as Amazon, eBay, as well as the manufacturers and distributors, as to the source of the goods and merchandise being sold by Bender and SC1. SC1 and Bender repeatedly crafted deceptions and caused false information to be presented to cover up the true origins of the goods and merchandise offered online. SC1 and Bender priced the goods and merchandise slightly below the current retail value.

More than $3 million of these goods and merchandise had been stolen, including goods and merchandise that were stolen from a school district and intended for use by underprivileged children as part of a benefit program.

In 2017, HGF sold more than $125,000 of iPods that had been stolen from a New Mexico school district and intended for underprivileged children. In 2018, HGF sold more than $550,000 of goods and merchandise that had been stolen from a Delaware FedEx Ground distribution center. The Defendant was unaware of the origin of the stolen goods.

Apart from his activities with SC1, Bender also knowingly purchased counterfeit goods and merchandise, primarily from overseas (more than 25 international shipments) but also from local sources, and sold these counterfeit goods and merchandise through eBay.

As part of his participation in the conspiracy and scheme to defraud, Bender believes he received more than approximately $10,000 per year from the eBay sales of stolen goods and merchandise. On April 15, 2016, in the District of Maryland, the defendant willfully made and subscribed a U.S. Joint Income Tax Return, IRS Form 1040, for the year 2015, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Form 1040, which was filed with the IRS, falsely reported gross receipts, in line 1 of Schedule C, of $1,384,156 and

2

cost of goods sold, in line 4 of Schedule C, of $1,151,371, when the defendant then and there knew his gross receipts and cost of goods sold were substantially less than the reported amounts.

The defendant filed similarly false returns for the tax years 2014 through 2018, which also falsely inflated the gross receipts and cost of goods sold of Bender's businesses. In each of these years, Bender reported as his gross receipts amounts that had actually been generated by SC1's sales through his eBay stores and reported as his cost of goods sold the difference between gross receipts and the amount SC1 paid him for the use of his eBay stores. As a result, Bender engaged in significant misstatements on his tax returns for each year. Bender also subscribed to additional false information on his tax returns, including overstating his postage expenses.

In total, Bender stipulates that he failed to pay the United States an additional $36,518 in taxes due and owing for the tax years 2014 – 2018.

I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I understand it, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.

_3/17/2020_  
Date

_James Edward Bender_  
James Edward Bender